NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CABLZ, INC.,**
*Appellant*

v.

**CHUMS, INC., CROAKIES, INC.,**
*Appellees*

---

2016-1823

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2014-01240.

---

Decided:  September 12, 2017

---

MICHAEL ANTHONY LADRA, Atherton, CA, argued for appellant. Also represented by MICHAEL J. DOUGLAS, JOE L. LEAK, HUNTER SPENCER MORANO, Leak, Douglas & Morano, PC, Birmingham, AL.

MARC T. RASICH, Stoel Rives LLP, Salt Lake City, UT, argued for appellees. Also represented by JOSHUA GIGGER; HUNTER OLDS FERGUSON, Seattle, WA.

---

Before REYNA, SCHALL, and WALLACH, *Circuit Judges.*

REYNA, *Circuit Judge.*

Following institution of *inter partes* review, the United States Patent Trial and Appeal Board found every claim of U.S. Patent No. 8,366,268 ("'268 patent") unpatentable as obvious. Cablz, Inc., the owner of the '268 patent, appeals from this decision, arguing that substantial evidence fails to support the Board's obviousness determination and that the Board failed to adequately explain a motivation to combine the prior art. Finding no error in the Board's decision, we *affirm*.

BACKGROUND

The '268 patent is entitled "Eye Wear Retention Device." As the patent explains, people have long been using devices like chains, strings, and ropes to retain their glasses around their necks. A significant problem is that such devices rest directly against the wearer's back or neck, which can cause the device to become entangled with clothing or coated with sweat or suntan lotion. The '268 patent purports to solve the problem and discloses an eyewear retainer that "extends rearward from the head of the wearer and is suspended off the neck of the wearer." J.A. 40 at Abstract. Figure 4 is illustrative of the invention:



FIG. 4

J.A. 44. The '268 patent has 17 claims. Claim 1 is representative and recites:

> 1. An eyewear retention device comprising two temple retainers connected by a resilient cable, such that when the temple retainers are attached to a pair of eyeglasses and the eyeglasses are worn over the ears of a wearer, the cable extends rearward from the head of the wearer and is suspended off the neck of the wearer.

J.A. 47 at col. 4, ll. 36–41.

Cablz sued Chums, Inc. and Croakies, Inc. ("Appellees") for infringement of the '268 patent in the United States District Court for the Northern District of Alabama. In response, Appellees successfully petitioned for *inter partes* review of all claims of the '268 patent. The U.S. Patent Trial and Appeal Board ("Board") instituted the IPR over four pieces of prior art: (1) Bill Monroe, *Outdoor folks don't use trendy glasses-holders*, The Oregonian, E4 (July 5, 1991) ("Monroe"); (2) U.S. Patent No. 6,941,619, "Eyeglass Retainer with Dual Use Connectors" ("Mackay"); (3) U.S. Patent App. Pub. No. 2007/0046889, "Eyewear with Weighted Flexible Temples" ("Miller") and

(4) U.S. Patent No. 6,764,177, "Eyeglass Retainer" ("Chisolm"). *Chums, Inc. v. Cablz, Inc.*, No. IPR2014–01240, 2016 WL 763054, at *2 (P.T.A.B. Feb. 8, 2016).

PRIOR ART

1. Monroe

Monroe is a 1991 news article from The Oregonian that details a sunglass retainer crafted by fisherman Mark Sosin. Mr. Sosin explained that he used a piece of 300-lb test monofilament tied onto his glasses with dental floss, depicted here:



J.A. 412. Mr. Sosin explained that he did not like the feeling of a glasses retainer resting on his neck in the heat. J.A. 416. Consequently, as described in the article, he created a retainer that "never hangs up and never drapes around his neck. Indeed, it sticks straight out behind his head at all times the glasses are worn." J.A. 416. To make the retainer, Mr. Sosin bent "a length of

300-pound test monofilament so thick and stiff that the only knot it would take would be big enough to tie up a small ship." J.A. 416.

### 2. Mackay

Mackay discloses an eyewear retainer that includes two temple retainers attached to the ends of a variety of different cords. Mackay shows that the temple retainers can be attached to different parts of a pair of glasses:



J.A. 420–21 at Fig. 2A & 2B.

### 3. Miller

Miller discloses a counter-weighted eyeglass frame that uses cable "made from a metallic core coated in a smooth casing." J.A. 440. Miller's frame is depicted here:



Figure 8

J.A. 436 at Fig. 8.

### 4.   Chisolm

Chisolm, like Mackay, discloses temple retainers that can be attached in different configurations to a pair of eyeglasses:



J.A. 444; s*ee also* J.A. 447–49.

### THE BOARD'S DECISION

The Board ultimately found claims 1–17 of the '268 patent unpatentable. Relevant to this appeal, the Board construed "resilient" to mean "having sufficient stiffness to maintain its shape and to return to its original form after being bent." *Chums*, 2016 WL 763054, at *2. On this construction, the Board concluded that Monroe in combination with the other references taught "temple retainers connected by a resilient cable" or "member." *Id.* at *6. In doing so, the Board described Mr. Sosin's device as a "resilient cable/member" that "must in some way be connected or attached to the eyeglasses in order to function." *Id.* The Board additionally found that the prior art in combination disclosed each of the dependent claim limitations. *Id.* at *7.

Regarding motivation to combine, the Board rejected Cablz's arguments that the cited combinations taught away from the '268 patent's invention. "None of Patent Owner's examples of purported 'teaching away' criticize, discredit, or otherwise discourage the solution claimed. . . . We are persuaded, rather, by Petitioner's more detailed responses explaining why the prior art references do not 'teach away' in the manner alleged by Patent Owner." *Id.* at *8.

The Board also discussed Cablz's argument that no one had recognized or solved the "being in the way" problem, that is, that traditional glasses retainers could become entangled in clothing. *Chums*, 2016 WL 763054, at *8–9. Contrary to Cablz's arguments, the Board found that Mr. Sosin's device both recognized and solved this problem. *Id.* at *8–9. The Board also addressed but ultimately found unavailing Cablz's contention that the age of the references and the fact that Appellees did not combine the references to create their own product were no impediment to a motivation to combine the prior art. *Id.* at *9–10. The Board also recognized that to achieve

the '268 patent's configuration required only "simple substitution." *Id.* at \*11.

Finally, the Board considered objective indicia of non-obviousness, but concluded that "Petitioner's strong evidence of obviousness of claims 1–17 outweighs the evidence of secondary considerations of nonobviousness." *Id.* at \*15.

Cablz timely appealed, and we have jurisdiction under 28 U.S.C. § 1295(a).

STANDARD OF REVIEW

The court reviews the Board's legal conclusions of obviousness de novo. Underlying factual findings are reviewed for substantial evidence. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1373 (Fed. Cir. 2016). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 995, 1000 (Fed. Cir. 2016) (citation omitted).

DISCUSSION

Cablz challenges the Board's conclusion that the claims of the '268 patent are unpatentable for two reasons. First, Cablz argues that substantial evidence does not support the Board's determination that the device described in Monroe uses "resilient" material, and second, that the Board failed to articulate a motivation to combine the references.

1.  Waiver

As an initial matter, we conclude that Cablz waived its argument that Monroe fails to disclose a "resilient" cable or member because it failed to raise this argument in its briefing before the IPR oral hearing. The court retains case-by-case discretion over whether to apply waiver. *In re Nuvasive, Inc.*, 842 F.3d 1376, 1380 (Fed. Cir. 2016) (citing *Harris Corp. v. Ericsson Inc.*, 417 F.3d

1241, 1251 (Fed. Cir. 2005)). A party waives an argument that it failed to present to the Board because it deprives the court of the benefit of the Board's informed judgment. *Id.* (citing *In re Watts*, 354 F.3d 1362, 1367–68 (Fed. Cir. 2004)).

Cablz points only to a generic statement in its Patent Owner Response to argue that it preserved this issue for appeal. In its Response, Cablz argued generally that "no reference teaches a resilient cable connected to a temple retainer as claimed." J.A. 239. But this does not sufficiently preserve the particular issue of whether Monroe discloses a "resilient" cable as that term was construed by the Board. This is especially true as Cablz, in numerous other places, admitted that Monroe's retainer was "resilient." *See*, *e.g.*, J.A. 250 ("A POSITA would not use Chisolm's slider without Monroe's heavy, thick, stiff and stout line or *any other resilient cable*.") (emphasis added); J.A. 258 ("Monroe discloses a *resilient member*, but not a cable.") (emphasis added); J.A. 261–62 (referring to Monroe's "resilient member").

Cablz's failure to brief the issue prior to the IPR oral hearing caused the Board to not explicitly address Cablz's argument that Monroe fails to teach a "resilient" retainer. Instead, the Board categorized Monroe's retainer as resilient based on its reading of the reference: "We understand that Monroe's *resilient* cable/member must in some way be connected . . . ." *Chums*, 2016 WL 763054, at *6 (emphasis added). As a result, we do not have the benefit of the Board's informed judgment on the specific reading of Monroe that Cablz advances on appeal. The argument is thus waived. *See Watts*, 354 F.3d at 1368.

### 2. Substantial Evidence

Notwithstanding the arguments concerning waiver, we find that the Board's conclusion that Monroe discloses a "resilient" retainer is supported by substantial evidence. Cablz argues that while Monroe may disclose a device

that uses a retainer that is sufficiently stiff to retain its shape, it says nothing about the retainer's ability to return to its original shape after being bent.

First, as described above, Cablz referred to Monroe's retainer as "resilient." Second, Monroe describes the retainer as "so thick and stiff that the only knot it would take would be big enough to tie up a small ship." J.A. 416. Third, Mr. Sosin testified that "300-pound mono, you can't bend it or keep it down there, it will pop right back up." J.A. 987. Fourth, Appellees' expert concluded that "the monofilament in Sosin's eyewear retainer is an elongated piece of resilient plastic." J.A. 474. This information was all before the Board and sufficient for a reasonable mind to conclude that Monroe's retainer is made from material that both retains its shape and returns to its original form after being bent. As such, the Board's determination is supported by substantial evidence. *See Unwired*, 841 F.3d at 1003–04.

### 3. Motivation to Combine

Cablz argues that the Board failed to provide evidence and reasoning that would support a motivation to combine the prior art references. Cablz argues that the Board did not explicitly provide a reason to combine the prior art references, but rather shifted the burden to Cablz to argue why the references should *not* have been combined. We disagree.

We may affirm the Board's ruling if we reasonably discern that it followed a proper path, even if that path is less than perfectly clear. *Nuvasive*, 842 F.3d at 1383 (citing *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974)); *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1365 (Fed. Cir. 2015).

The Board's decision provides a reasonably discernable path for articulating a motivation to combine the prior

art. The Board noted initially that Appellees contend that "one of skilled in the art would have 'immediately recognized that a simple substitution of the eyewear retainers of Mackay for the attachment method employed in Monroe would have had various advantages.'" *Chums*, 2016 WL 763054 at \*5. The Board similarly summarized Appellee's arguments regarding a motivation to combine the other prior art references. *Id.* at \*5–6. After analyzing the arguments, the Board concluded that achieving the '268 patent's configuration required only "simple substitution." *Id.* at \*11.

The Board also addressed and rejected each of Cablz's arguments that there was no motivation to combine the prior art. First, the Board found no persuasive reason why the cited combinations "taught away" from the '268 patent's invention. *Id.* at \*8. Second, the Board rejected Cablz's argument that Mr. Sosin failed to recognize and solve the "being in the way problem." *Id.* at \*8–9. Third, the Board found the age of the references and the fact that Appellees did not combine the references to create their own product did not preclude a motivation to combine the prior art. *Id.* at \*9–10. Ultimately, the Board concluded that Appellees provided "strong evidence of obviousness." *Id.* at \*15. Taken together, we may reasonably discern that the Board found a motivation to combine the references because doing so would have been a matter of simple substitution that would result in an eyeglass retainer with certain advantages.

## CONCLUSION

We have considered Cablz's other arguments and do not find them persuasive. We thus affirm the Board's conclusion that claims 1–17 of the '268 patent are unpatentable.

**AFFIRMED**