# United States Court of Appeals for the Federal Circuit

_____

**MANUEL ALMANZA, AND OTHER SIMILARLY SITUATED PERSONS,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2018-1803

_____

Appeal from the United States Court of Federal Claims in No. 1:13-cv-00130-EDK, Judge Elaine Kaplan.

_____

Decided: August 21, 2019

_____

DANIEL M. ROSENTHAL, James & Hoffman, PC, Washington, DC, argued for plaintiff-appellant. Also represented by RYAN EDWARD GRIFFIN, ALICE HWANG; DAVID L. KERN, Kern Law Firm, El Paso, TX.

ALBERT S. IAROSSI, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOSEPH H. HUNT, STEVEN JOHN GILLINGHAM, ROBERT EDWARD KIRSCHMAN, JR.

_____

Before NEWMAN, CLEVENGER, and REYNA, *Circuit Judges.*

REYNA, *Circuit Judge.*

Manuel Almanza represents a group of United States Border Patrol Agents who seek compensation from the United States for activities they claim were performed during "hours of work" while attending a voluntary canine instructor course. The United States Court of Federal Claims granted summary judgment in favor of the government and denied Almanza's claims. Because the court correctly determined that Almanza is not entitled to compensation as a matter of law, we affirm.

## BACKGROUND

### I. Border Patrol Agents, Canine Handlers, and Canine Instructors

Border Patrol Agents ("agents") of the United States Customs and Border Protection ("CBP") are responsible for patrolling the international borders of the United States. In performing those responsibilities, some agents choose to be paired with a trained detection canine. Those agents are referred to as "canine handlers." Trained canines assist the canine handlers in detecting controlled substances and concealed individuals attempting to enter the United States illegally. Agents who wish to work with canines must attend a seven-week program of field and classroom training at a canine training program center. Successful graduates of the training program are certified canine handlers.

Canine handlers perform the same duties as agents who do not work with canines. Canine handlers also receive the same compensation as agents who do not work with canines, except that canine handlers receive additional pay for hours dedicated to canine care and maintenance training.

Certified canine handlers may seek additional certification as "canine instructors." Seeking canine instructor certification is voluntary. Certified canine instructors may take on collateral duties to help canine handlers maintain their certification, but canine instructors do not receive a pay raise, new title, or any other additional compensation absent a promotion. Agents who do not seek or secure canine instructor certification do not suffer any adverse consequences with respect to their existing jobs. They are not demoted, disciplined, or precluded from later seeking certification. Agents are nonetheless motivated to obtain canine instructor certification in order to "mak[e] that next step in [their] career" and to potentially become a "course development instructor or . . . to be maybe an assistant director, even director." J.A. 165–66 (Bordeaux Dep. Tr.).

## II. Detection Canine Instructor Course

To obtain canine instructor certification, agents must enroll in CBP's Detection Canine Instructor Course ("DCIC"), a voluntary, twelve-week training program. CBP solicits interest in the DCIC by circulating memoranda that advertise the program and advise agents how to apply. Agents interested in attending the DCIC must submit an application and undergo a competitive interview process. The DCIC trains student instructors through a combination of classroom instruction, hands-on training, and fieldwork.

During the time period relevant to this case, student instructors were required to meet certain performance standards and to pass all exams with a minimum score of 90%. Students were also graded on their completion of paperwork that certified instructors used to evaluate the performance of the detection canines ("white sheets") and canine handlers ("green sheets").

A regular day at the DCIC lasted eight hours (6:00 am to 2:00 pm). Student instructors received their full compensation for those hours. But students testified that

successful passage of the exams required substantial studying during off-hours. Students also testified that they spent substantial off-hours time completing green sheets and white sheets. Students were not compensated for any off-hours time spent studying or completing green sheets and white sheets ("off-hours activities").

### III. Fair Labor Standards Act and OPM Regulation 5 C.F.R. § 551.423

The Fair Labor Standards Act ("FLSA") entitles employees to overtime pay for their hours of work that exceed forty hours per week. 29 U.S.C. § 207(a)(1). The Office of Personnel Management ("OPM") administers the FLSA with respect to federal employees. 29 U.S.C. § 204(f). OPM regulations provide that "[h]ours of work means all time spent by an employee performing an activity for the benefit of an agency and under the control or direction of the agency." 5 C.F.R. § 551.104. Two provisions of the OPM regulations are relevant here: 5 C.F.R. § 551.423(a)(2) and (a)(4).

First, under 5 C.F.R. § 551.423(a)(2), time spent in training outside of regular working hours is considered "hours of work" if both of the following conditions are satisfied:

> (i) The employee is directed to participate in the training by his or her employing agency; and

> (ii) The purpose of the training is to improve the employee's performance of the duties and responsibilities of his or her current position.

An employee is "directed to participate" in the training when "the training is required by the agency and the employee's performance or continued retention in his or her current position will be adversely affected by nonenrolment in such training." *Id.* § 551.423(b)(1).

Second, under 5 C.F.R. § 551.423(a)(4), "[t]ime spent by an employee performing work for the agency during a period of training" is "considered hours of work." For an activity to constitute "work for the agency," it must be, among other things, undertaken "primarily for the benefit of the employer." *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944); *Bull v. United States*, 68 Fed. Cl. 212, 222, *decision clarified*, 68 Fed. Cl. 276 (2005), *aff'd*, 479 F.3d 1365 (Fed. Cir. 2007).

## IV. Claims Court Proceedings

Manuel Almanza and about two hundred other similarly situated persons (collectively, "Almanza") filed suit in the United States Court of Federal Claims ("Claims Court") on February 20, 2013, arguing entitlement to overtime pay because the off-hours activities constituted "hours of work" under 5 C.F.R. § 551.423(a)(2) and (a)(4). Almanza filed a motion for summary judgment on December 8, 2015, and the government filed a cross-motion for summary judgment on January 18, 2016. On July 26, 2016, the Claims Court granted summary judgment in favor of the government, finding no material facts in dispute and determining that, as a matter of law, Almanza was unable to show that any of the off-hours activities constituted "hours of work" under 5 C.F.R. § 551.423.

With respect to Almanza's claim under 5 C.F.R. § 551.423(a)(2) (training outside of work hours), the Claims Court concluded that Almanza failed to satisfy either of the two independently required conditions. First, the Claims Court determined that the agents were not "directed to participate" in the DCIC because undisputed facts showed that "participation in the DCIC was voluntary in the first instance and [the agents'] failure to apply or enroll would have had no effect on their existing jobs as canine handlers." J.A. 8. Second, the Claims Court determined that the purpose of training was not to improve the agents' performance of their existing position, but instead "was to

provide the [agents] with new skills and knowledge needed to take on additional collateral duties as canine instructors, perhaps leading to promotion within the canine program." J.A. 9.

With respect to Almanza's claim under 5 C.F.R. § 551.423(a)(4) (performing work for the agency), the Claims Court determined that the off-hours activities were not "work" that benefited the agency, and thus were not compensable. The court based its decision in part on Almanza's admission in summary judgment briefing that completion of the green sheets and white sheets "was a form of study and homework because correctly filling out such paperwork was part of learning to be a Canine Instructor." J.A. 9 n.3 (quoting J.A. 3199 n.54).

Almanza timely appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

Almanza raises three issues on appeal: (i) whether 5 C.F.R. § 551.423(a)(2) is invalid under *Billings v. United States*, 322 F.3d 1328 (Fed. Cir. 2003); (ii) whether the Claims Court erred in concluding on summary judgment that Almanza's time spent on off-hours activities was not "hours of work" under 5 C.F.R. § 551.423(a)(2); and (iii) whether the Claims Court erred in concluding on summary judgment that Almanza's time spent on off-hours activities was not "hours of work" under 5 C.F.R. § 551.423(a)(4).

We review a grant of summary judgment by the Claims Court de novo. *FastShip, LLC v. United States*, 892 F.3d 1298, 1302 (Fed. Cir. 2018). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Rule of the Court of Federal Claims 56(a)). In applying this standard, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's

favor." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1302 (Fed. Cir. 2005) (brackets omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). In the event of cross-motions for summary judgment, the court must evaluate each motion on its own merits, taking care in each instance to view the evidence in favor of the non-moving party. *Id.*

### I. Almanza's Challenge to the Validity of § 551.423(a)(2)

Almanza asserts that 5 C.F.R. § 551.423(a)(2) is inconsistent with the FLSA and with Department of Labor regulations governing the compensability of training time. Almanza asks us to therefore invalidate § 551.423(a)(2) under *Billings.* Appellant Br. 38–42 (citing 322 F.3d at 1334.)

We hold that Almanza waived its newly raised challenge to the validity of § 551.423(a)(2). Our precedent generally counsels against entertaining arguments not presented to the trial court. *M-I Drilling Fluids UK Ltd. v. Dynamic Air Ltda.*, 890 F.3d 995, 1000 n.1 (Fed. Cir. 2018) (citing *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997) ("In short, this court does not 'review' that which was not presented to the district court.")). We "retain[] case-by-case discretion over whether to apply waiver." *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1251 (Fed. Cir. 2005). Only rarely do we exercise that discretion to decide an argument newly raised on appeal. *Mass. Mut. Life Ins. Co. v. United States*, 782 F.3d 1354, 1369 (Fed. Cir. 2015).

Almanza concedes that he never challenged the validity of § 551.423(a)(2) to the Claims Court. In fact, Almanza admits that he expressly relied on § 551.423(a)(2) when he sought compensation for the off-hours activities. Specifically, Almanza contended in his Claims Court briefing that "a key federal regulation, 5 CFR 551.423, supports payment to Plaintiffs under each one of three independent sub-

components: (1) 5 CFR 551.423(a)(2); (2) 5 CFR 551.423(a)(4); (3) 5 CFR 551.423(d)." J.A. 3180–81.

Almanza now asks us to consider the validity of § 551.423(a)(2). Almanza attempts to avoid waiver by claiming he relied on § 551.423(a)(2) only "in the alternative," and only after the Government "invoked" that section. Reply Br. at 9. We are unpersuaded. Almanza does not provide any authority or further explanation for his assertion that we should decline to find waiver on either basis.

We also reject Almanza's argument that his challenge to the validity of § 551.423(a)(2) constitutes one of the exceptional situations in which we consider an argument in the first instance on appeal. *See* Reply Br. 9–11. While Almanza argues that finding waiver would "result in a miscarriage of justice," Reply Br. 10, we believe the opposite is true. Fairness and other policy considerations compel us to find Almanza's untimely challenge to § 551.423(a)(2) waived because Almanza previously sought relief from the Claims Court under that exact provision. *See HTC Corp. v. IPCom GmbH & Co.*, 667 F.3d 1270, 1281–82 (Fed. Cir. 2012) (explaining that our rule against considering new arguments on appeal ensures finality, conserves judicial resources, and "discourages parties from inviting an alleged error below only to raise it on appeal"); *Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1363 (Fed. Cir. 1999) ("A party's argument should not be a moving target. The argument at the trial and appellate level should be consistent."); *Sierra Club v. Yeutter,* 926 F.2d 429, 438 (5th Cir. 1991) (finding the government's argument waived because the government originally "sought review under the standard it now challenges").

The cases cited by Almanza do not persuade us otherwise. For example, Almanza cites *Forshey v. Principi* for the proposition that "appellate courts may apply the correct law even if the parties did not argue it below and the

court below did not decide it." Reply Br. 10 (quoting 284 F.3d 1335, 1356 (Fed. Cir. 2002)). But Almanza's quotation omits a critical aspect of the *Forshey* holding, which states in full that "appellate courts may apply the correct law even if the parties did not argue it below and the court below did not decide it, *but only if an issue is properly before the court*." 284 F.3d at 1356 (emphasis added). In *Forshey*, we explained that an issue is not properly before the court where, for example, the appellant argued to this court that the Court of Appeals for Veterans Claims applied the wrong standard of review, yet "raised no issue below concerning the correct standard of review." *Id.* at 1357. For these reasons, we find that Almanza waived his challenge to the validity of § 551.423(a)(2).

## II. Almanza's Claim for Compensation Under § 551.423(a)(2)

Turning to the merits of Almanza's claim for compensation under § 551.423(a)(2), Almanza asserts that a triable issue exists with respect to both required conditions. We disagree. We conclude that Almanza fails as a matter of law to satisfy either condition required under § 551.423(a)(2), and we therefore hold that the Claims Court properly granted summary judgment in favor of the government with respect to that provision.

As to the first requirement of § 551.423(a)(2)—that the employee is "directed to participate" in the training activities—Almanza argues that off-hours studying was "doubly" required because student instructors were required to attend and participate in the course, and then required to study during off-hours in order to pass the exams and to avoid failing the course. Appellant Br. 49. Almanza further contends that failure to engage in these required activities would have likely resulted in discharge from the program. According to Almanza, this in turn would have adversely affected the student instructors in their position as "course participants" (by being discharged from that

position) and as "canine-handling agents" (by remaining only "competent" canine handlers, rather than "expert" canine handlers like their peers who graduated from the DCIC). *Id.* at 51.

We agree with the Claims Court that the student instructors were not "directed to participate" in off-hours studying within the meaning of § 551.423(a)(2). There is no dispute that participation in the DCIC was voluntary, not required. Merely because a voluntary training program has certain required tasks does not alone render the program "required by the agency." *See* § 551.423(b)(1). We expect that nearly all voluntary training programs will have at least some requirements regarding attendance, participation, or tasks that must be completed. Our adoption of Almanza's argument would thus render the "directed to participate" requirement of § 551.423(a)(2)(i) essentially meaningless.

It is also undisputed that agents who declined to enroll in the DCIC, or who enrolled in but failed the DCIC, were not adversely affected in the performance of their current duties or in their continued retention as canine handlers. Those agents were not demoted or disciplined in any way. *E.g.*, J.A. 166; 230; 318. To the contrary, they continued to work as canine handlers with the same pay and responsibilities as agents who completed the DCIC program, and they were permitted to reapply to the DCIC at a later date. J.A. 3–4. We reject Almanza's argument that agents are "adversely affected" under § 551.423(a)(2)(i) merely because DCIC graduates attain certain skills not attained by agents who did not enroll or who failed out of the course.

As to the second requirement of § 551.423(a)(2)—that the "purpose of training is to improve the employee's performance of the duties and responsibilities of his or her current position"—Almanza argues that a triable issue exists as to whether the purpose of training was to improve the skills of agents as canine handlers. Appellant Br. 43.

Specifically, Almanza contends that agents who completed the DCIC program "improved vastly" in their canine handling skills and that the program "allowed them to perform new functions." *Id*.

Even viewing these facts with all justifiable inferences in Almanza's favor, we conclude that the primary purpose for enrolling in the DCIC was for career advancement, i.e., for agents to "mak[e] that next step in [their] career." J.A. 165 (Bordeaux Dep. Tr.); *see also* J.A. 166 (Bordeaux Dep. Tr.) (completion of DCIC was "necessary" for "moving on to course development instructor or . . . to be maybe an assistant director, even director"); J.A. 318 (Kraus Dep. Tr.) ("I wanted to further my career, further my knowledge."); J.A. 404 (Salas Dep. Tr.) ("I would like to further my career in the canine department . . . [and attending DCIC] was a big part of that."). This type of "upward mobility training" is expressly exempted from the type of training compensable under § 551.423(a)(2)(ii). 5 C.F.R. § 551.423(b)(2).

Evidence of incidental improvements to the employees' performance of their current responsibilities does not convert "upward mobility training" into the type of training compensable under § 551.423(a)(2)(ii). We agree with the government that "[r]are indeed is the training which has no beneficial effects on an employee's current job." Appellee Br. 36 (emphasis omitted).

Because we conclude that Almanza is unable, as a matter of law, to satisfy either of the two requirements of § 551.423(a)(2), we affirm the Claims Court's decision on summary judgment that the off-hours activities were not compensable as "hours of work" under § 551.423(a)(2).

### III. Almanza's Claim for Compensation Under § 551.423(a)(4)

Almanza also seeks compensation by asserting that the off-hours time spent completing green sheets and white

sheets constituted "hours of work" under § 551.423(a)(4). Almanza contends that the agents' off-hours completion of this paperwork benefits the CBP in two ways. First, Almanza asserts that the green sheets and white sheets "advance[] the Government's efforts to train canines and canine handlers during the instructor course." Appellant Br. 33. Second, Almanza argues that the "white sheets" are "essential to the Government's interdiction efforts" because they provide documentary support in criminal proceedings for the government to show training history for the canines and also the "the fruits of the canine detection program." *Id.* at 35; *see also id.* at 13.

We agree with the Claims Court that the record evidence, even when drawing all justifiable inferences in Almanza's favor, shows that the agents' off-hours completion of green sheets and white sheets was a form of homework and practice for the agents, rather than "primarily for the benefit" of CBP. *See Tenn. Coal*, 321 U.S. at 598. The evidence shows that the agents practiced completing green sheets and white sheets during off-hours "to learn how to do it and learn how to do it correctly." J.A. 311 (Kraus Dep. Tr.). The agents were graded on how well they completed this practice paperwork. J.A. 1164 (Shaw Dep. Tr.) (confirming "student instructors [are] graded on how well they fill out the white sheets"); J.A. 218 (Cuevas Dep. Tr.) (DCIC instructors would "review those [green] sheets and look at how [student instructors were] documenting, see if I'm evaluating properly . . . how I speak to them, my knowledge that I'm giving.").

Almanza conceded in briefing to the Claims Court that off-hours completion of this paperwork "itself was a form of study and homework because correctly filling out such paperwork was learning to be a Canine Instructor." J.A. 3199 n.54. And while Almanza contends that the CBP generally uses green sheets and white sheets for certain purposes, Almanza has not identified any evidence that shows the specific green sheets and white sheets *completed by DCIC-*

*enrolled agents during off-hours* were used for those purposes. Instead, the evidence shows that paperwork completed by DCIC-enrolled agents during off-hours was for practice and grading purposes, not primarily for the benefit of CBP. *See* J.A. 517 (Smith Dep. Tr.) ("Q. If you had given repeatedly low scores to a handler, is it possible that handler would have failed the course? A. I don't think we had that power, because we were being graded on our grading of students. So no, it would take a certified instructor observing the same thing that I'm observing to make that decision."); J.A. 310 (Kraus Dep. Tr.) ("The green sheets are part of our recordkeeping score as a student instructor. . . . And if you did a poor job on your green sheets, it got reflected on your score as an instructor.").

Almanza also cites the testimony of Laren Shaw, CBP's Assistant Director for Headquarters Canine Program, who indicated that CBP has used white sheets (canine evaluations) in court proceedings. Appellant Br. 13 (citing J.A. 1164). But the record does not support Almanza's assertion that the specific white sheets completed by DCIC-enrolled agents during off-hours were used in court proceedings. To the contrary, Ms. Shaw testified that each canine had "two canine training records, two white sheets, two versions," and that only "[o]ne is for the student instructors," which was graded on "how well they fill out the white sheets." J.A. 1163–64. The white sheets that Ms. Shaw testified were used in court proceedings, on the other hand, were "closed out at the end of every day"; they were not completed during off-hours. J.A. 1165. We find no record evidence that the government has ever used in a criminal proceeding a white sheet completed by a DCIC-enrolled agent during off-hours.

On this record, we agree with the Claims Court that any "work" performed by the student instructor agents was "performed during regular duty hours for which [the agents] were compensated." J.A. 9. We affirm the Claims Court's decision on summary judgment that off-hours time

spent completing green sheets and white sheets was not "hours of work" under § 551.423(a)(4).

CONCLUSION

We have considered Almanza's other arguments and find them unpersuasive.  We conclude that Almanza waived his challenge to the validity of 5 C.F.R. § 551.423(a)(2) and that the Claims Court correctly granted summary judgment in favor of the government after concluding that Almanza's time spent on after-hours activities was not "hours of work" compensable under § 551.423(a)(2) or (a)(4).  We affirm.

**AFFIRMED**

COSTS

No costs.