ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of - | ) | |
| | ) | |
| Sheffield Korte Joint Venture | ) | ASBCA Nos. 62972, 62973 |
| | ) | |
| Under Contract No. W912QR-15-C-0027 | ) | |

APPEARANCE FOR THE APPELLANT: Michael E. Wilson, Esq.
    Greensfelder, Hemker & Gale, P.C.
    St. Louis, MO

APPEARANCES FOR THE GOVERNMENT: Michael P. Goodman, Esq.
    Engineer Chief Trial Attorney
    R. Lauren Horner, Esq.
    James M. Inman, Esq.
    Engineer Trial Attorneys
    U.S. Army Engineer District, Louisville

OPINION BY ADMINISTRATIVE JUDGE CATES-HARMAN ON THE
GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT AND APPELLANT'S
CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

These appeals involve a contract for design and construction of a new 600-member Army Reserve Center near Waldorf, Charles County, Maryland. Sheffield Korte Joint Venture (SKJV) seeks additional compensation from the United States Army Corps of Engineers (USACE) to meet permitting requirements imposed on this project. SKJV also appeals the contracting officer's (CO) decision to rescind a series of five unilateral modifications issued by USACE providing additional compensation to SKJV for difficulties it encountered in obtaining sewer, water, and access permits from Charles County and the Maryland State Highway Administration (MDSHA).

USACE moves for summary judgment on the grounds that Federal Acquisition Regulation (FAR) 52.236-7, PERMITS AND RESPONSIBILITIES (NOV 1991) and other contract provisions required SKJV to obtain licenses and permits necessary for project completion without additional expense to the government. USACE also seeks summary judgment of its affirmative claim for recoupment of the amounts paid under the unilateral modifications. SKJV moves for partial summary judgment on the grounds that USACE constructively changed the contract by providing defective specifications and by misrepresenting the project's requirements. SKJV also challenges the credit sought by the government in the amount of $418,406 arguing that there was accord and satisfaction between SKJV and USACE regarding the five

unilateral modifications. USACE responds that there was no accord and satisfaction regarding the five unilateral modifications as appellant contends. For the reasons identified below, we grant USACE's motion and deny SKJV's motion.

STATEMENT OF FACTS (SOF) FOR THE PURPOSE OF THE MOTIONS

1. On August 28, 2015, USACE awarded Contract No. W912QR-15-C-0027 to SKJV for "Design and Construction of a New 600-Member Bowie Army Reserve Center Project located near Waldorf, Charles County, Maryland" (R4, tab 11A at 720, 722;[1] tab 11B at 733).

2. The total contract price was $21,427,802, including base work and all exercised options at time of award (R4, tab 11A at 720; tab 11B at 734).

3. The as-awarded project also included design and construction of an organizational maintenance shop, an unheated storage building, and military equipment parking (R4, tab 11B at 739-41).

4. The contract's statement of work (SOW) included specification Part 1, entitled "Design Objectives, and Functional and Area Requirements" (R4, tab 11C at 1017). Section 1.1.2 of Part 1 provided: "This project shall consist of the design and construction of an Army Reserve Center complete with required utilities, storm drainage, communications, electric, HVAC, fire protection/alarm systems, IDS, force protection measures, paving, walks, curbs, parking, access roads, exterior lighting, site improvements, grading and landscaping on Government-owned land" (*id.*).

5. Section 1.2.4 of Part 1, "Design Freedom," provided:

> *Requirements stated in this RFP are minimums.*
> *Innovative, creative, or cost-saving proposals, which meet*
> *or exceed these requirements are encouraged*, and will be
> considered more favorably.
>
> . . . .
>
> 1.2.4.2 The conceptual design Drawings, this Statement of
> Work, and the Outline Technical Specifications, along with
> the other information and requirements in this RFP, serve
> as requirements for Contractor building design and
> construction completion, along with other code, regulatory
> and professional practice requirements. *The extent of*

---

[1] The government R4 page numbers begin with "GovR4-000" and are omitted here.

2

*development of these RFP documents in no way relieves
the successful offeror from responsibility for completing
the design, construction documentation, and construction
of
the facility in conformance with Applicable Criteria and
codes.*

*1.2.4.3 The conceptual design illustrates desired general
arrangements, orientation, and adjacencies, and provides
examples of exterior images which is acceptable to the
Government – it is not intended to dictate the final layout
and image for the project. The Contractor's designers
shall develop and refine the conceptual site and building
design in their completion of the design and construction
documents. Such development shall be consistent with the
criteria and acceptable to the Government.*

(R4, tab 11C at 1018) (emphasis added)

6. Section 1.3 of Part 1, "Contractor Responsibility," provided: "The Contractor
shall provide all labor, materials, equipment, supplies, *permits*, fees, and consultant
services to design and construct this Training Center complex" (R4, tab 11C at 1020)
(emphasis added).

7. Section 1.7 of Part 1, "Site," provided, in part:

Site work includes all design and construction of site
features necessary to meet the intent of the RFP, including
but not limited to, site planning, demolition, clearing,
grading, erosion control, site drainage, utility systems,
pavements, pedestrian and vehicular circulation systems,
signage, site lighting, landscaping, physical security
measures, fencing, *permitting*, and site furnishings.

(R4, tab 11C at 1023) (emphasis added)

8. Section 1.7.8 of Part 1, "Regulatory Compliance," provided:

*The Contractor shall assure that the site development
complies with all applicable local, State and Federal
regulations.* A list of known regulations is located in the
Attachments to this Statement of Work. *Timely acquisition
of the necessary design and construction related permits*

3

*shall be the responsibility of the Contractor.* The
Contractor, upon notice to proceed, shall immediately
begin working on the permits so as not to delay completion
of the project. *The Contractor shall prepare permits,
associated drawings, public notices, and other related
documentation as necessary to successfully meet permit
approval status. The Contractor shall pay for associated
permit fees.*

(R4, tab 11C at 1026) (emphasis added)

9. The SOW included specification Part 2, entitled "Applicable Criteria and
Coordination With Local Authorities" (R4, tab 11C at 1029). Section 2.2, "Local and
State Codes or Standards," provided:

The following specifications, codes, standards, bulletins
and handbooks form a part of this RFP.

2.2.1 State and Local

Maryland State Highway Administration - Standard
Specifications for Construction and Materials
Maryland State Highway Administration – State Highway
Access Manual Engineering Access Permits Division
January 2004
Maryland State Highway Administration – Highway
Drainage Manual
Maryland Department of the Environment - 2011
Maryland Standards and Specifications for Soil Erosion
and Sediment Control
Maryland Department of the Environment – 2000
Maryland Stormwater Design Manual
Maryland Department of the Environment - Erosion and
Sediment Control Guidelines
Maryland Department of the Environment - Stormwater
Management Guidelines for State and Federal Projects,
April 15, 2010
Maryland Forest Conservation Act
Charles County Department of Planning and Growth
Management – Water and Sewer Ordinance,
September 2011 or current edition

Charles County Department of Planning and Growth Management – Plan Preparation Package, June 2012 or current edition

(*Id.* at 1030-31)

10. Section 2.6 of Part 2, "Permits and Coordination With Local Authorities," provided:

> *The Contractor is responsible for making all applications and obtaining required municipal, utility, and regulatory agency coordination, reviews, permits, inspections and approvals, and is responsible for payment of any associated fees or charges.* If Government information, signatures, names or addresses are required for applications, approvals or permits, the Contractor is responsible for obtaining same. This is a Federal Government project; therefore, some reviews, permits, inspections and approvals are not required. The Contractor is responsible for identifying such requirements for a commercial project and verifying with the Government which of these will be waived. *Permit requirements which have been identified are listed below. This list is not all-inclusive, and Contractor is responsible for verifying that information below remains accurate.*

(*Id.* at 1037) (emphasis added)

11. The contract incorporated FAR 52.236-7, PERMITS AND RESPONSIBILITIES (NOV 1991) (the Permits and Responsibilities Clause), which provided:

> *The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work.* The Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence. The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for

> any completed unit of work which may have been accepted under the contract.

(R4, tab 11B at 879) (emphasis added)

12. The project was located in Charles County, Maryland (R4, tab 11B at 733), at the corner of an access road called Fox Tail Place and a state highway called Marshall Corner Road (R4, tab 11E at 2434; JSUMF[2] ¶6).

13. MDE is the State of Maryland governmental authority that exercises jurisdiction over stormwater management (JSUMF ¶ 7; *see also* gov't mot. ¶¶ 3, 41).

14. MDSHA is the State of Maryland government authority that exercises jurisdiction over state highways (JSUMF ¶ 8; *see also* gov't mot. ¶¶ 5, 41).

15. Charles County is the State of Maryland authority that exercises jurisdiction over sewer and water line access within Charles County (JSUMF ¶ 9; *see also* gov't mot. ¶¶ 4, 41).

16. Michael Baker International (formerly known as Michael Baker, Jr., Inc.) is an architectural and engineering firm retained by USACE that participated in developing the project's request for proposal (RFP), including the preparation of conceptual drawings (R4, tab 6; Higgins dep. at 38-39; JSUMF ¶ 10).

17. Frankford Short Bruza Associates, P.C. (FSB), the designer of record hired by SKJV, was responsible for overall design of the project. Mott McDonald is a civil engineering firm retained by FSB responsible for the civil engineering portion of the project's design. (JSUMF ¶ 11; *see also* app. mot. ¶ 2)

18. USACE issued its notice to proceed on October 7, 2015 (R4, tab 12).

19. Between June 27, 2016 and May 17, 2017, SKJV and its design subcontractors engaged in several rounds of submission to the MDE involving changes and additions to design drawings and review and comment by the MDE. MDE granted the early mass grading, demolition, and foundation construction permit, effective August 1, 2016. (R4, tabs 13-15, 18-21, 24; JSUMF ¶ 20)

20. SKJV sent a letter dated September 22, 2016 to USACE identified as a "Request for Change on Behalf of FSB/Mott MacDonald" (R4, tab 16 at 2464).

---

[2] The parties provided a Joint Stipulation of Undisputed Material Facts (JSUMF) for the purposes of the motions.

Attached to this letter was another letter, dated September 20, 2016, from Mott MacDonald with the subject, "Bowie ARC Stormwater Management Basis of Bid Versus Design" (*id.* at 2465-68). This letter purported that the requirements imposed by MDE differed from the RFP's requirements for the project (*id.*).

21. By letter dated October 13, 2016, USACE informed SKJV that it disagreed with SKJV's contention that the requirements imposed by MDE differed from those in the RFP (R4, tab 17).

22. On or before January 19, 2017, the Charles County Department of Planning and Growth Management informed SKJV that a development services permit and a separate stormwater permit from Charles County would also be required for the work relating to the Fox Tail Place access road. The requirement to obtain these permits was not listed in the permit matrix found in the contract documents. (JSUMF ¶ 31; *see also* R4, tab 11C at 1631)

23. The parties stipulate that Charles County and MDSHA required changes to SKJV's as-submitted design in furtherance of obtaining relevant permits (JSUMF ¶ 30).

24. On January 19, 2017, USACE issued and approved a Basic Change Document for the Charles County and MDSHA required changes to SKJV's as-submitted design, identified as Mod Serial No. AA-1. This document authorized $20,000 to be paid to SKJV for additional Charles County-required design work:

> 1) Prepare and submit required design documents to Charles County for the VSS plans (VSS-160028) for the Access Road area not on Government Parcel.
>
> 2) Prepare and submit required design documents to Charles County for the application of Development Services Permit for the Access Road Area not on Government Parcel.
>
> 3) Complete a design that separates the access road storm features from the Government Parcel.

(App. mot., ex. A)

25. In March 2017, USACE issued a Price Negotiation Memorandum denoted as "Case AA-1 – Charles County Requirements." This memorandum provided in part:

> 1. Necessity for Change: The Design-Build RFP requires the contractor to pay permit fees to Charles

7

County to obtain the necessary permits for conduct earthwork activities for Erosion and Sediment control. During the permitting process, the Department of Planning and Growth Management of Charles County, MD confirmed that in order to obtain the necessary erosion and sediment control permit, a design that separates the storm water features from the existing access road and the project site must be included in the permit application. Adding this design requirement in order to obtain the permit for Charles County will require a change to the contract.

2. [ ] The RFP does not include the requirement for providing an approved design with the permit application.

(App. mot., ex. B)

26. By letter dated April 12, 2017, SKJV filed a request for equitable adjustment seeking $1,800,000, as a result of alleged changed conditions associated with its attempts to obtain state permits, increasing the cost of site design and construction costs of the project. (R4, tab 21 at 2479-88).

27. On April 18, 2017, USACE issued Unilateral Modification No. A00002 to the contract for Change Case AA (Charles County requirements), identical to the scope described in Basic Change Document AA-1 on January 19, 2017. This modification authorized expenditures not to exceed $20,000, thereby increasing the contract's price by $20,000. Modification No. A00002 was designated Part 1 of Change Case AA and granted no additional time. (R4, tab 22; app. mot., ex. B)

28. By letter dated May 9, 2017, SKJV informed USACE that delays in the permitting process were causing SKJV to incur a "rough order of magnitude of construction costs" in the amount of $773,700, excluding "permit work" (R4, tab 23).

29. By letter dated May 17, 2017, MDE advised USACE that it had approved the final stormwater management and sediment control plans (R4, tab 24). By letter dated June 2, 2017, MDE advised USACE that it had approved the sequence of construction and the erosion and sediment controls (R4, tab 25).

30. On or about September 22, 2017, USACE issued a Basic Change Document identified as Mod Serial No. AA-2. This document authorized an additional $30,000

to be paid to SKJV for additional Charles County-required design work involving the same three categories as Mod Serial No. AA-1:

> 1) Prepare and submit required design documents to Charles County for the VSS plans (VSS-160028) for the Access Road area not on Government Parcel.
>
> 2) Prepare and submit required design documents to Charles County for the application of Development Services Permit for the Access Road Area not on Government Parcel.
>
> 3) Complete a design that separates the access road storm features from the Government Parcel.

(App. mot., ex. F)

31. On November 14, 2017, USACE issued Unilateral Modification No. A00005 to the contract supplementing the amounts previously added for Change Case AA (Charles County requirements). The modification authorized expenditures not to exceed $30,000, thereby providing a total maximum increase of $50,000 in amounts obligated relating to Change Case AA. Modification No. A00005 was designated Part 2 of Change Case AA and granted no additional time. (R4, tab 26)

32. On November 14, 2017, Ms. Jane Kiefer, a USACE regional construction project manager, and Mr. Hans Probst, a USACE administrative contracting officer, signed a Price Negotiation Memorandum dated October 17, 2017. Part 1 of the memorandum, "Necessity for Change," stated:

> While the contractor's designer continued with design requirements for Charles County permit, their cost has increased significantly. Therefore a supplement to the Part 1 NTP modification of the same title is necessary.

Part 3, "Price Negotiation Memorandum," stated:

> It is anticipated that the final price agreement will be reached within 60 days of comment resolution from Charles County. The contractor has stated that the designer has already expended more than $30k for the design work and Charles County comments have increased design effort even more. Once a negotiated settlement has

been reached, a Part 2 Final modification will be executed with appropriate time extension.

Part 4, "Justification for Unpriced Notice to Proceed," stated:

On 7 February 2017, the contractor's [project manager] notified USACE during the weekly telephone conference that an additional design stormwater design was required by Charles County, MD in order to obtain the required stormwater management permit.

(App. mot., ex. G)

33. By letter dated December 15, 2017, USACE denied SKJV's April 12, 2017 REA (R4, tab 27).

34. By letter dated January 26, 2018, USACE addressed SKJV's stated position that it was entitled to additional compensation for difficulties meeting Charles County's permitting requirements. The letter denied six of SKJV's eight grievances but found merit with respect to the other two issues—design work due to a discrepancy between MDE's and Charles County's requirements for the type of inlets for drain storage and additional costs relating to polymer concrete to be used for transition manholes. The amount of these additional costs was not stated. (R4, tab 28)

35. On or about February 13, 2018, USACE issued a Basic Change Document identified as Mod Serial No. AA-3. Seven items were added in the Basic Change Document under "Necessity for Change":

1. Type K Inlets
This is a Charles County storm water requirement. The design of the storm water on Charles County property was not included in the contract.

2. Polymer Concrete Manhole
Charles [C]ounty has made this request and the Government has agreed to provide. Charles [C]ounty storm water requirements were not in the contract.

3. Fire Hydrants
The contract was required to meet the Charles County requirements which is fire hydrants every 300 feet, but the RFP drawings show fire hydrants spaced every 400 feet.

4. Entrance Road Turn Around

10

Charles County is requiring a turn around at the end of the entrance road that was not identified in the NTP.

5. State Highway Authority – Increase Entrance Radius
The State Highway Authority has requested that the radius of the entrance road be increased for safety reasons. This should have been coordinated with the SHA during preparation of the RFP.

6. Wash Rack Enclosure
Charles County is requiring the contractor to enclose the north side of the wash rack. This requirement was unknown at the time of RFP preparation.

[7.] Additional Permit Fees
The permit fees have increased since time of award.

(App. mot., ex. H)

36. On February 15, 2018, USACE issued Unilateral Modification No. A00009 to the contract supplementing the amounts previously added for Change Case AA (Charles County requirements) not to exceed $75,000. This modification was designated Part 3 of Change Case AA and granted no additional time. (R4, tab 29)

37. By letter dated March 1, 2018, USACE requested that SKJV provide pricing and justification for the seven items identified in Modification No. A00009. The letter also reiterated that the not-to-exceed price of the modifications at that time was $75,000. (R4, tab 30)

38. SKJV responded by email dated May 2, 2018. This email included several attachments, including information about the dollar amounts SKJV sought for each of the seven items. SKJV requested $739,614.78 in total. The email also noted that "Subcontractors/Vendors are going thru our contract for compensation from the USACE. I do not believe this should be included in the above items but if you would like us to include please let me know (should be roughly one month now to accumulate these costs)." (App. mot., ex. I)

39. On June 27, 2018, USACE issued a Price Negotiation Memorandum identified as "Case No. AA-4 'Charles County Requirements', Part 1, Supplement 3." Part 1, "Necessity for Change," read:

This is an in scope modification due to a design omission. Section 01 02 00.00 48 Paragraph 3.1.8 in the Design-

11

Build RFP required the DB contractor to pay fees to obtain the earthwork permit for Charles County. The DB RFP did not include a requirement to provide a design to Charles County during the permitting process that separates the storm water features of the existing access road from the project site. Without this design, Charles County will not issue permits required to start construction on the access road and site work. In order to include this design in the permit submission, a modification to the contract is required.

Part 1 Supplement 3 – While the contractor's designer continued with design requirements for Charles County permit, their cost has increased significantly. Charles County has identified additional requirements to meet their storm water ordnance. Therefore an additional supplement to the Part 1 NTP modification of the same title is necessary.

This project is located in Charles County, MD. A storm water management fee was established in April 2012, affecting nine counties and the City of Baltimore in order to meet the requirements of the federal Clean Water Act as it concerns the Chesapeake Bay watershed. The law was passed in response to a decree by the Environmental Protection Agency and aggressively sought to reduce sediment loading to the Chesapeake Bay. The contract, as issued, failed to incorporate these stringent permitting requirements.

(App. mot., ex. J at 1) The memorandum continues:

A not to exceed price in the amount of $20,000 was established in the Part 1 NTP; an additional $30,000 was established in Part 1, Supplement 1; an additional $75,000 was established in Part 1, Supplement 2; and an additional $224,814.~~06~~[3] is being established by Part 1, Supplement 3. The Government has already recognized $418,406 of validated costs associated with this change.

---

[3] A note below the paragraph clarified the strikethrough: "The amount of $224,814.06 is hereby corrected to read '$224,814.00'" (app. mot., ex. J at 2).

12

(*Id.* at 2)

40. On June 28, 2018, USACE issued Unilateral Modification No. A00011 to the contract increasing the total not-to-exceed price to a lump sum amount of $224,814. The aggregate obligated amount under Change Case AA (Charles County requirements) was increased to $349,814. The modification was issued "for the purpose of making interim payment to the Contractor pending negotiation and issuance of the final adjustment modification." Modification No. A00011 was designated Part 4 of Change Case AA and granted no time extension. (R4, tab 31; JSUMF ¶ 46)

41. On or about July 25, 2018, USACE executed a Price Negotiation Memorandum identifying the "Change Request Number and Title" as "Change AA-4 – REA for Charles County Requirements" (R4, tab 31A). This memorandum listed the same seven items previously identified in Mod Serial No. AA-3 and conceded liability for them. According to the memorandum, price negotiations took place between February 11, 2018 and July 16, 2018, but SKJV and USACE failed to agree to a proposed price change. (*Id.* at 2572-74) By June 2018, USACE had determined that SKJV had support for $293,496 relating to Change AA. The memorandum stated that the balance that USACE determined was supported—$66,682—was included in an offer to SKJV, but SKJV never responded to the offer. (*Id.* at 2574) The memorandum concluded:

> Since no response has been received to date, it is believed that the Government and the Contractor are not in agreement that the balance of $66,682 from the offered amount of $293,496 with zero calendar days of contract time extension, is fair and reasonable. Therefore, it is recommended that a unilateral modification for this amount be executed.

(*Id.* at 2574-75)

42. On August 8, 2018, USACE issued Unilateral Modification No. A00013 to the contract for "Case AA-5: Charles County Requirements." This modification increased the final amount under Change AA (Charles County requirements) by $68,592. The modification reads in part: "Full and final payment to provide labor, materials, equipment and supervision to comply with Charles County requirements." The contract price was increased by $81,592,[4] for a total increase of $418,406 in obligated

---

[4] Modification No. A00013 included the sum of $13,000 under Case AK for an unrelated differing site condition. SKJV's entitlement to the $13,000 is not in

amounts relating to Case AA. Modification No. A00013 was designated Part 5 of Change Case AA and granted no additional time. (R4, tab 32; JSUMF ¶ 47)

43. SKJV never signed Modification No. A00013 (JSUMF ¶ 48).

44. By letter dated January 3, 2020, SKJV submitted an uncertified request for a contracting officer's final decision (COFD), which incorporated SKJV's April 12, 2017 REA by reference as its claim. A letter from Mott MacDonald dated January 3, 2023, was attached to SKJV's claim. (R4, tab 1B)

45. By letters dated February 27 and June 30, 2020, the CO informed SKJV that its claim was missing the required certification under the Contract Disputes Act (R4, tabs 34, 36).

46. By letter dated November 10, 2020, SKJV resubmitted its claim with a proper certification to the CO, incorporating by reference its April 12, 2017 and January 3, 2020 correspondences as comprising the claim (R4, tabs 1C, 37).

47. On April 2, 2021, the CO denied SKJV's claim (R4, tab 1D). Additionally, the CO issued an affirmative claim to recoup the $418,406 paid to SKJV under Modification Nos. A00002, A00005, A00009, A00011, and A00013 on the grounds that the Permits and Responsibilities Clause precluded entitlement to additional compensation and that there was no evidence of accord and satisfaction regarding the unilateral modifications (*id.* at 110).

48. By letter dated June 20, 2021, SKJV requested reconsideration, arguing that USACE had erred in claiming the $418,406 credit (R4, tab 45).

49. On June 28, 2021, SKJV timely appealed the COFD to the Board.

DECISION

*The Parties' Contentions*

SKJV argues that USACE constructively changed the contract by breaching the implied warranty that its provided drawings and specifications would be adequate for the project (app. opp'n at 60-84, 91-97), and that USACE is liable for changes to the contract due to its misrepresentation of the project (*id.* at 89-90). SKJV also maintains that the parties reached an accord and satisfaction on the five unilateral modifications awarding amounts totaling $418,406 (*id.* at 98-101). USACE contends it is entitled to

---

dispute and is not included in the amount that the government seeks to recoup. (JSUMF ¶ 47, 49).

summary judgment because any changes to the project were directed by third parties (gov't mot. at 37-42), that SKJV cannot demonstrate that the project's specifications were defective (*id.* at 42-44), that the contract unambiguously placed the responsibility of meeting local permitting requirements on SKJV (*id.* at 44-47), and that there was no accord and satisfaction regarding the unilateral modifications to the contract (*id.* at 51-53).

*Standard of Review*

Summary judgment is proper when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). A fact is material if it may affect the outcome of the decision. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The movant bears the burden of establishing the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323.

Regardless of the type of claim being raised, the applicable substantive law determines which facts are material and thus preclude an entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248. Such facts must be viewed in the light most favorable to the non-moving party. *Id.* at 255; *C. Sanchez and Son, Inc. v. United States*, 6 F.3d 1539, 1541 (Fed. Cir. 1993). However, the non-movant must set forth specific facts demonstrating the existence of a genuine issue of material fact; mere conclusory statements and bare assertions are inadequate. *Mingus*, 812 F.2d at 1390-91; *Liberty Lobby*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [non-movant]'s position will be insufficient . . . ."). Our responsibility is not "'to weigh the evidence and determine the truth of the matter,' but rather to ascertain whether material facts are disputed and whether there exists any genuine issue for trial." *Holmes & Narver Constructors, Inc.*, ASBCA Nos. 52429, 52551, 02-1 BCA ¶ 31,849 at 157,393 (quoting *Liberty Lobby*, 477 U.S. at 249). "Contract interpretation is a question of law generally amenable to summary judgment." *Varilease Tech. Grp., Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002) (citing *Textron Def. Sys. v. Widnall*, 143 F.3d 1465, 1468 (Fed. Cir. 1998)); *see also NVT Technologies, Inc.* 370 F.3d 1153, 1159 (Fed. Cir. 2004). However, if the Board determines that it cannot resolve the dispute without reviewing extrinsic evidence, it should not grant summary judgment and instead allow the parties to conduct discovery. *See Korte-Fusco Joint Venture*, ASBCA No. 59767, 15-1 BCA ¶ 36,158 at 176,456. When deciding cross-motions for summary judgment, the Board "'evaluate[s] each motion on its own merits, taking care in each instance to view the evidence in favor of the non-moving party.'" '*Martin Aeronautics Co.*, ASBCA No. 62209, 22-1 BCA ¶38,112 at 185,120 (quoting *Almanza v. United States*, 935 F.3d 1332, 1337 (Fed. Cir. 2019). Thus, with respect to each motion, the non-movant "'receiv[es] the benefit of favorable

inferences.'" *Id.* (quoting *Chevron U.S.A., Inc. v. Mobil Producing Tex. & N.M.*, 281 F.3d 1249, 1253 (Fed. Cir. 2002)).

*SKJV is Not Entitled to an Increase in Contract Price as a Matter of Law*

SKJV claims that USACE constructively changed the contract by requiring it to perform additional design services and construction work beyond that which was specified in the project's conceptual documents and other contract documents in order to comply with MDE, Charles County, and MDSHA permitting requirements (app. opp'n at 60-84). To demonstrate a constructive change to the contract, SKJV must show that (1) it performed work beyond the contract's requirements, and (2) that the government, expressly or impliedly, ordered the additional work. *Bell/Heery v. United States*, 739 F.3d 1324, 1335 (Fed. Cir. 2014) (citing *The Redland Co. v. United States*, 97 Fed. Cl. 736, 755-56 (2011)). SKJV fails to meet either of these requirements. First, the contract unambiguously placed all responsibility and risk of obtaining permits necessary for completion of the project on SKJV. The Permits and Responsibilities Clause provides:

> *The Contractor shall, without additional expense to the Government, be responsible for obtaining any necessary licenses and permits, and for complying with any Federal, State, and municipal laws, codes, and regulations applicable to the performance of the work.* The Contractor shall also be responsible for all damages to persons or property that occur as a result of the Contractor's fault or negligence. The Contractor shall also be responsible for all materials delivered and work performed until completion and acceptance of the entire work, except for any completed unit of work which may have been accepted under the contract.

(SOF ¶ 11) This obligation is reiterated in several of the SOW's provisions (*see* SOF ¶¶ 4-10). The Permits and Responsibilities clause unambiguously imposes upon the contractor the responsibility to determine and comply with both State and local permitting requirements without further cost to the government. *See Bell/Heery*, 739 F.3d at 1335; *ACC Constr. Co.*, ASBCA Nos. 62265, 62937, 22-1 BCA ¶ 38,194; *AMEC Environment & Infrastructure, Inc.*, ASBCA No. 58948, 15-1 BCA ¶ 35,924 at 175,593. The numerous other provisions within the contract merely reinforce what is already made clear in the Permits and Responsibilities clause. SKJV fails to provide any basis for ignoring its contractual responsibility to obtain permits or to perform work on the project necessary to obtain those permits. *See ACC Constr. Co.*, 22-1 BCA ¶ 38,194 at 185,478 ("The contract could not have been clearer that [appellant] was solely responsible for ascertaining and complying with the state's requirements

16

and for obtaining all necessary state and local permits for the project, whatever they might be.").

SKJV asserts that USACE is nevertheless responsible for the alleged changes to the contract under the *Spearin* doctrine (app. opp'n at 60-71, 91-97; app. reply at 14-25). Specifically, SKJV alleges that the conceptual drawings and other contract documents USACE provided for the project were defective because they did not comply with all of the relevant permitting requirements (app. opp'n at 60-61). The *Spearin* doctrine provides that "if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of defects in the plans and specifications." *United States v. Spearin*, 248 U.S. 132, 136 (1918). The government's detailed design specifications contain an implied warranty that if they are followed, a satisfactory result will be produced. *Id* at 136-37; *Stuyvesant Dredging Co. v. United States*, 834 F.2d 1576, 1582 (Fed. Cir. 1987). Accordingly, when a contractor's adherence to the government's detailed specifications results in unsatisfactory performance, the design is considered defective, the government is deemed to have breached this implied warranty, and "the contractor is entitled to recover all of the costs proximately flowing from the breach." *Essex Electro Eng'rs, Inc. v. Danzig*, 224 F.3d 1283, 1289 (Fed. Cir. 2000) (citations omitted); *see Spearin*, 248 U.S. at 138. In such cases, the government is liable for "any damages incurred by a contractor as a result of defects in such plans and specifications" and "all delay caused by defective or inadequate specifications is per se unreasonable and hence compensable." *Turner Constr. Co.*, ASBCA No. 25447 *et al.*, 90-2 BCA ¶ 22,649 at 113,806 (citing *Chaney and James Constr. Co., Inc., v. United States*, 421 F.2d 728, 731-32 (Ct. Cl. 1970); *see also Essex*, 224 F.3d at 1289 ("The compensable costs include those attributable to any period of delay that results from the defective specifications.").

Specifications fall into two categories—design specifications and performance specifications. "Design specifications explicitly state how the contract is to be performed and permit no deviations." *Stuyvesant*, 834 F.2d at 1582. Conversely, performance specifications specify the results to be obtained, but leave it to the contractor's discretion as to how to achieve those results. *Id.* (citing *J.L. Simmons Co. v. United States*, 412 F.2d 1360, 1362 (Ct. Cl. 1969)); *see also P.R. Burke Corp. v. United States,* 277 F.3d 1346, 1356 (Fed. Cir. 2002) (explaining Federal Circuit precedent "[p]erformance specifications 'set forth an objective or standard to be achieved, and the successful bidder is expected to exercise his ingenuity in achieving that objective or standard of performance, *selecting the means and assuming a corresponding responsibility* for that selection.'") (quoting *Blake Constr. Co. v. United States*, 987 F.2d 743, 745 (Fed. Cir. 1993) (emphasis in original). The implied warranty that the government's specifications are free from design defects attaches only to design specifications—it "does not accompany performance specifications that

merely set forth an objective without specifying the method of obtaining the objective." *White v. Edsall Constr. Co.*, 296 F.3d 1081, 1084 (Fed. Cir. 2002).

These specifications did not specify how the project was to be designed, but merely obligated SKJV to meet USACE's objectives for the project while also complying with requirements and guidelines of both the State of Maryland and Charles County to obtain permits, paying both the applicable fees and costs necessary to meet the requirements. The contract's provisions repeatedly emphasized that this responsibility rested solely with SKJV. (SOF ¶¶ 4-11) Section 1.2.4 of Part 1 of the SOW, "Design Freedom," provided:

> *Requirements stated in this RFP are minimums.*
> *Innovative, creative, or cost-saving proposals, which meet*
> *or exceed these requirements are encouraged*, and will be
> considered more favorably.
>
> . . .
>
> 1.2.4.2 The conceptual design Drawings, this Statement of
> Work, and the Outline Technical Specifications, along with
> the other information and requirements in this RFP, serve
> as requirements for Contractor building design and
> construction completion, along with other code, regulatory
> and professional practice requirements. *The extent of*
> *development of these RFP documents in no way relieves*
> *the successful offeror from responsibility for completing*
> *the design, construction documentation, and construction*
> *of*
> *the facility in conformance with Applicable Criteria and*
> *codes.*
>
> 1.2.4.3 *The conceptual design illustrates desired general*
> *arrangements, orientation, and adjacencies, and provides*
> *examples of exterior images which is acceptable to the*
> *Government – it is not intended to dictate the final layout*
> *and image for the project. The Contractor's designers*
> *shall develop and refine the conceptual site and building*
> *design in their completion of the design and construction*
> *documents.* Such development shall be consistent with the
> criteria and acceptable to the Government.

(SOF ¶ 5) Since these specifications left discretion for the project's overall design to SKJV, we find that they were performance specifications. *Stuyvesant,*

18

834 F.2d at 1582.  Consequently, the *Spearin* doctrine is inapplicable here. *Edsall*, 296 F.3d at 1084.

Likewise, SKJV cannot shift the unexpected increase in costs to the government under a constructive change theory as it cannot meet the essential element that there was additional work ordered, expressly or impliedly, by the government.  *Bell/Heery*, 739 F.3d at 1335.  It is undisputed that the alleged changes to the contract were directed by MDE, Charles County, and MDSHA, not USACE (SOF ¶¶ 19, 22-23).  The government cannot be held responsible for determinations made by another sovereign government.  *ACC Constr. Co.,* 22-1 BCA ¶ 38,194 at 185,478 (citing *Kellogg Brown & Root Servs.*, 20-1 BCA ¶ 37,656 at 182,826); *see also Zafer Taahhut Insaat ve Ticaret A.S. v. United States*, 833 F.3d 1356, 1364 (Fed. Cir. 2016) (holding the government is not responsible for the sovereign acts of a foreign nation).  "[T]he doctrine of constructive change cannot be invoked against the [g]overnment because it did not itself effect an alteration in the work to be performed, much less an alteration 'so drastic that it effectively' resulted in a cardinal change 'requir[ing] the contractor to perform duties materially different from those originally bargained for.'"  *Bell/Heery*, 739 F.3d at 1335 (quoting *Krygoski Constr. Co. v. United States,* 94 F.3d 1537, 1543 (Fed. Cir. 1996)). Under these facts, SKJV cannot recover for a constructive change.

*SKJV's Misrepresentation Claim*

Additionally, SKJV argues that USACE is liable for changes to the contract due to its alleged misrepresentation of the project (app. opp'n at 89-90).  To prevail, SKJV must demonstrate that USACE "made an erroneous representation of material fact that [SKJV] honestly and reasonably relied on to [its] detriment."  *T. Brown Constructors, Inc. v. Pena*, 132 F.3d 724, 728-29 (Fed. Cir. 1997).  SKJV fails to identify any specific facts supporting its misrepresentation claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A pleading that merely offers conclusions or a "'formulaic recitation of the elements of a cause of action'" without identifying any specific facts is inadequate to support a claim. (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007))).  Moreover, as discussed above, the contract made clear that SKJV would be responsible for obtaining any permits necessary for the project (SOF ¶¶ 4-11).  In fact, while § 2.6 of Part 2 of the SOW listed various permits that would be required for the project, it also stipulated that "[t]his list is not all-inclusive, and Contractor is responsible for verifying that information below remains accurate" (SOF ¶ 10).  Accordingly, SKJV either knew or should have known of the possibility that permits additional to those enumerated in the contract may have been necessary and was responsible for

19

researching these requirements.   There are simply no facts presented by appellant that could support a finding of misrepresentation.

*As a Matter of Law, USACE is Entitled to Recoup the $418,406 That it Paid as a Result for Mistakenly Issuing Unilateral Modification Nos. A00002, A00005, A00009, A00011, and A00013*

SKJV asserts that USACE's affirmative claim for $418,406 associated with Modification Nos. A00002, A00005, A00009, A00011, and A00013 was improper because USACE constructively changed the contract, alleging that Charles County and MDSHA permitting requirements were beyond the scope of the contract documents (app. opp'n at 91-97).  As discussed above, the Permits and Responsibilities Clause and several of the SOW's provisions placed the obligations to acquire any permits necessary for the project and to perform work necessary to obtain such permits solely on SKJV (SOF ¶¶ 4-11).  SKJV once again relies on *Spearin* in its attempt to circumvent this responsibility (app. opp'n at 91-97).  However, as discussed above, *Spearin* is inapplicable to these circumstances.  The contract's specifications did not specify how the project was to be designed, but merely stipulated that SKJV meet USACE's demands for the project while complying with state and local permitting requirements and left discretion for the project's overall design to SKJV (*see* SOF ¶¶ 4-11).  Accordingly, they were performance specifications, and SKJV's reliance on *Spearin* is misplaced.  *Stuyvesant*, 834 F.2d at 1582.

SKJV challenges USACE attempts to recover the $418,406 arguing that the parties reached an accord and satisfaction as it relates to the five unilateral modifications.  (App. opp'n at 98-101).  "To reach an accord and satisfaction, there must be mutual agreement between the parties with the intention clearly stated and known" to the parties.  *Coastal Gov't Servs., Inc.*, ASBCA No. 50283, 99-1 BCA ¶ 30,348 at 150,088 (citing *Metric Constructors, Inc.*, ASBCA No. 46279, 94-1 BCA ¶ 26,532 at 132,058).  "To prove accord and satisfaction, [SKJV] must demonstrate '(1) proper subject matter; (2) competent parties; (3) a meeting of the minds [between SKJV and USACE]; and (4) consideration.'"  *Whiting-Turner Contracting Co.*, ASBCA No. 56319, 10-1 BCA ¶ 34,436 at 169,951 (quoting *Bell BCI Co. v. United States*, 570 F.3d 1337, 1341 (Fed. Cir. 2009)).

The unilateral modifications germane to this appeal were essentially settlement offers that SKJV was free to accept or decline.  *See Zinger Constr. Co.*, ASBCA Nos. 28788, 32424, 87-3 BCA ¶ 20,196 at 102,284.  The undisputed facts show that SKJV never accepted the terms of any of these offers—there was no "meeting of the minds."  Numerous communications between the parties and documents issued by USACE indicate that SKJV did not accept nor agree to the five unilateral modifications (*see* SOF ¶¶ 27, 31, 36, 40-42).  SKJV repeatedly sought amounts

20

exceeding those awarded via the unilateral modifications (*see* SOF ¶¶ 38, 41). Furthermore, SKJV never signed Modification No. A00013—the fifth and final modification (SOF ¶ 43). Accordingly, we find that there was no "mutual agreement"[5] between USACE and SKJV regarding the unilateral modifications, and therefore no accord and satisfaction. *Coastal Gov't Servs.*, 99-1 BCA ¶ 30,348 at 150,088.

The Contracting Officer's final decision seeks to recover the amounts paid to SKJV under the five modifications it contends were erroneously issued (Mod. Nos. A00002 - $20,000; A00005 - $30,000; A00009 - $75,000; A00011 - $224,814; A00013 - $68,592[6]) for a total sum of $418,406. (SOF ¶¶ 27, 31, 36-37, 40, 42-43, 47). We have jurisdiction to consider the government's affirmative claim of recoupment. *Nova Group, Inc.,* ASBCA No. 55408, 10-2 BCA ¶ 34,533 at 170,331. Having found that the additional work performed by SKJV to meet Charles County and MDSHA permitting requirements, was work required by the contract, there was no constructive change and no basis for the government's paying increased costs to SKJV. As such, we find that the five unilateral modifications were, as the CO contended, mistakenly issued and that the government thus incorrectly paid $418,406 for costs associated with the Charles County and MDSHA requirements for water, sewer, and access permits. As we established above, SKJV cannot rely upon the defense of accord and satisfaction. SKJV's challenge to the government's affirmative claim for the repayment of $418,406 is rejected. The USACE is entitled to recoup the funds incorrectly paid to the contractor and is entitled to judgment in the amount of $418,406.

<u>CONCLUSION</u>

For the foregoing reasons, we grant USACE's motion for summary judgment and deny SKJV's motion for partial summary judgment. The appeals are denied.

Dated: August 11, 2023

STEPHANIE CATES-HARMAN
Administrative Judge
Armed Services Board
(Signatures continued)                               of Contract Appeals

---

[5] Indeed, what SKJV is asking us to do is to enforce this agreement against the government, but be free of any obligation to comply with it, itself. That is not how contracts work.

[6] The sum of $13,000 paid under Modification No. A00013 for an unrelated differing site condition remains unaffected.

21

I concur                                    I concur

RICHARD SHACKLEFORD                J. REID PROUTY
Administrative Judge                       Administrative Judge
Acting Chairman                            Vice Chairman
Armed Services Board                       Armed Services Board
of Contract Appeals                        of Contract Appeals


      I certify that the foregoing is a true copy of the Opinion and Decision of the
Armed Services Board of Contract Appeals in ASBCA Nos. 62972, 62973, Appeals of
Sheffield-Korte Joint Venture, rendered in conformance with the Board's Charter.

      Dated:  August 11, 2023

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals

22